UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

Mark EDWARDS,

                 Petitioner,

                                        **MEMORANDUM & ORDER**
               v.                           09-CV-274 (PKC)

SUPERINTENDENT, SOUTHPORT C.F.,

                  Respondent.

----------------------------------------------------------------x


PAMELA K. CHEN, United States District Judge:


       Mark Edwards ("Petitioner") brings this *pro se* Petition for Writ of Habeas Corpus,

pursuant to 28 U.S.C. § 2254, attacking his 2005 state convictions resulting from a series of

armed robberies that took place in Nassau County, New York.  As part of his petition, Petitioner

has moved for leave to conduct discovery and for a "stay and abeyance" in order to exhaust a

claim in state court.  For the reasons set forth below, Petitioner's motions for discovery and to

stay the instant proceedings are denied, and his petition for writ of habeas corpus is denied in its

entirety.

## BACKGROUND

**I.**      **Relevant Factual and Procedural History**

       Between October 28, 2002, and November 27, 2002, Petitioner committed four armed

robberies, an attempted armed robbery, and an assault in Nassau County, New York (S. 6-7).[1]  In

---

[1] The Court recites relevant facts in the light most favorable to the verdict.  *See Garbutt v.
Conway*, 668 F.3d 79, 80 (2d Cir. 2012). Numbers preceded by "S." refer to the pages of the
sentencing minutes of Petitioner's January 27, 2005 sentencing proceedings.

each instance, Petitioner used a knife or a gun, and in all but the attempted robbery, Petitioner forcefully took cash from his victims (Michael Soffer Affidavit in Opposition to Petition for a Writ of Habeas Corpus, Dkt. 12 ("Soffer Aff.") at 1).

On November 28, 2002, Petitioner committed a robbery in Queens, New York, for which he was arrested that day (Respondent's Letter in response to July 2, 2013 order ("Dkt. 42") at 1). On November 29, 2002, Petitioner was arraigned in Queens County criminal court on a complaint charging him with Robbery in the First Degree (New York Penal Law § 160.15(3)). *Id.* at 2. Thereafter, Petitioner was incarcerated at the Rikers Island Correctional Facility (Dkt. 42, Exhibit 1).

On January 21, 2003, Petitioner was indicted by a Nassau County grand jury on five counts of Robbery in the First Degree (New York Penal Law § 160.15), one count of Attempted Robbery in the First Degree (New York Penal Law §§ 110.00/160.15), and one count of Assault in the Second Degree (New York Penal Law § 120.05(6)). *Id.* On March 4, 2003, Petitioner was arraigned in Nassau County on Indictment No. 115N-03 (Dkt. 42 at 2).

## A. Pretrial Proceedings

On January 21, 2004, Petitioner, who was represented by counsel, filed a *pro se* motion seeking dismissal of the charges against him on the ground that the delay in prosecuting his case violated his speedy trial rights guaranteed under the N.Y. Criminal Procedure Law §§ 30.20, 30.30, and 210.20, the Sixth Amendment of the U.S. Constitution, and Article 12 of the New York Civil Rights Law (Motion dated January 21, 2004). The People opposed the motion, and included the following in an affirmation in support of its opposition:

"5. A criminal action is commenced when an accusatory instrument is filed against a defendant in criminal court. In the instant case, felony complaints were not filed with the court. The case was presented to a Nassau County Grand Jury on January 15, 2003, pursuant to

Criminal Procedure Law Section 190.55(1)(c).  Therefore, the criminal action in this case did not commence until January 21, 2003, when the indictment was filed with the court.

6.  The defendant was arraigned on the indictment on March 4, 2003 . . . .  At that time, the People answered ready for trial.

7.  Pursuant to Criminal Procedure Law Section 30. 30(4), certain time periods must be excluded when computing the time within which the People must be ready for trial.  These include, but are not limited to, adjournments at the defendant's request and delays resulting from defendant's request for pre-trial hearings.  The People submit that when these time periods are excluded, the People have not exceeded the speedy trial time.  The People would submit that upon checking the court file, the timeliness of the prosecution can be verified."  (People's Reply to Defendant's Motion to Dismiss For Lack of Speedy Trial dated June 3, 2004).

The court denied Petitioner's motion to dismiss his indictment for lack of speedy trial.

*People v. Edwards*, Indict. No. 115N-03, Order dated July 12, 2004.

On July 7-8, 2004, the following facts were adduced at a pretrial suppression hearing.[2]  In November 2002, Nassau County police were aware of and had been actively investigating a pattern of robberies that had occurred in Elmont, Nassau County, New York ("Nassau Robberies"), involving a suspect described as "a light-skinned black man wearing a hooded sweatshirt." (H. Op. at 1).  On November 28, 2002 at 5:30 p.m., a radio transmission reported that a robbery had occurred just over the Queens border (the "Queens Robbery").  *Id.*  The suspect was a 5'9 black male, and he was reported to have fled on foot toward a home in Elmont. *Id.*  Nassau County Police Officer John LoPiccolo and his partner suspected Petitioner, whom they knew from prior unrelated incidents, of having committed the robbery based on the description of the perpetrator, the perpetrator's reported flight toward Petitioner's home, and the proximity of the Queens Robbery and Nassau Robberies to Petitioner's home  (H. Op. at 5).

---

[2] Numbers preceded by "H." refer to the hearing minutes of Petitioner's July 7-8, 2004, pretrial suppression hearing.  Numbers preceded by "H. Op." refer to the Decision of Hon. William Donnino, dated September 13, 2004, resulting from the suppression hearing.

Officer LoPiccolo met Nassau County Detective Robert Fitchett and New York City Police Department ("NYPD") officers, who were investigating the Queens Robbery, outside Petitioner's home (H. Op. at 2). There, they encountered Denise Halliburton, who identified herself as Petitioner's cousin (H. Op. at 5). She informed the officers that Petitioner was home, and upon their request, she used her cell phone to call Petitioner to the door. *Id.*

Petitioner opened the door and had a short conversation with Officer LoPiccolo before permitting him inside, "either by verbally asking him to come in or motioning with his arm." (H. Op. at 2). A few minutes later, two or three additional officers entered Petitioner's home. *Id.* "Officer LoPiccolo informed [Petitioner] that there had been an incident in Queens, and that [Petitioner] was a suspect." *Id.* Officer LoPiccolo asked Petitioner if he would step outside to allow the victim of the Queens Robbery to take a look at him, and if he was not positively identified as the perpetrator, the police would leave. *Id.* Petitioner verbally consented and accompanied the officers outside. *Id.*

Once outside, the victim positively identified Petitioner as the perpetrator of the Queens Robbery (H. Op. at 2-3). Officer LoPiccolo arrested Petitioner, handcuffed him and put him in the back of an NYPD police car. *Id.* Detective Fitchett and his partner then entered the NYPD car and asked Petitioner for consent to search his house (H. Op. at 3). The detectives told the Petitioner that "it was all up to him. It was voluntary, and if it was okay, he would have to sign [a] form stating it was okay." *Id.* Petitioner appeared to read the form, gave his verbal consent to the search, and signed the form. *Id.* Thereafter, Detective Fitchett and his partner entered Petitioner's house and searched his bedroom, where they found money in a garbage can, a pullover jacket and a pair of handcuffs on the bed, and a wallet filled with money in a nightstand drawer. *Id.*

Petitioner was taken to the NYPD 105th Precinct station in Queens.  *Id.*  At 8:30 p.m. that night, Nassau County Detectives Edward Byrnes and Douglas Sorenson arrived at the station to interview Petitioner.  *Id.*  NYPD Detective John Warner read Petitioner his *Miranda* rights, which Petitioner subsequently waived.  *Id.*  After Detective Warner questioned Petitioner about the Queens Robbery, Detective Byrnes then questioned him about the Nassau Robberies.  *Id.* During the interview, Petitioner admitted "committing a series of robberies in Elmont, including robberies of a Bank of New York, a cleaning store, and a woman in her driveway."  *Id.* Petitioner "claimed to have worn a hooded sweatshirt during these robberies, and to have brandished a wood-handled kitchen knife that was still in his dishwasher."  (H. Op. at 3-4).

At the request of Detectives Sorenson and Byrnes, Detective Fitchett and another officer returned to Petitioner's house about an hour and a half after Petitioner's arrest to seize a knit hat, gloves, handcuffs, and hooded sweatshirts that Petitioner mentioned during his interrogation (H. Op. at 4).  Later, Detective Fitchett found in the dishwasher two knives similar to those described by Petitioner, which he photographed and seized.  *Id.*

The hearing court issued the following rulings with respect to the admissibility of the physical evidence seized and statements obtained from Petitioner on the night of the arrest:  The court denied suppression of the items seized from Petitioner's bedroom immediately after his arrest, based on Petitioner's consent to the search (H. Op. at 5).  The court agreed to suppress the items seized pursuant to the second and third searches of Petitioner's house conducted while Petitioner was being interviewed in the Queens precinct.[3]  The court ruled that any photographs

---

[3] The hearing court explained this ruling as follows: "These additional searches were not permissible.  The police obtained consent to search [Petitioner's] home.  Pursuant to that consent, they searched the house and seized evidence.  That was the extent of the search that was authorized.  The People have not carried their heavy burden of showing that [Petitioner] consented to any subsequent search of his house for additional evidence.  [Petitioner's] written

taken or observations made by the police during the first lawful search were admissible, even if those observations or photographs included items impermissibly seized during the second and third searches.  *Id.*  The court denied suppression of Petitioner's statements to the police.  *Id.*

### B.  The Trial, Verdict and Sentencing

At trial, the People presented the following evidence regarding each robbery or attempted robbery for which Petitioner was ultimately convicted.

*Citgo Gas Station Robbery*

Petitioner robbed a Citgo gas station in Elmont on October 28, 2002.  The Petitioner put something that felt like a gun on the victim's back (T. 627-31).[4]  The victim told police that the perpetrator took $200 and a pack of Blackwood Cigars (T. 637-38, 660).  Later, Petitioner confessed to police that he punched a Citgo gas station attendant in the face, and took his money and a pack of Blackwood Cigars (T. 1122-24).

*Tudor Cleaners Robbery*

Petitioner robbed Tudor Cleaners in Elmont on November 2, 2002.  Petitioner held a knife to the victim's neck and took $400 from the register (T. 570-71, 601).  Petitioner then pointed his knife at a second victim and demanded his wallet (T. 571, 601-2).  After falling backwards to avoid Petitioner's knife, the victim gave Petitioner $1,250 from his wallet (T. 601-03).  At trial, one of the victims identified Petitioner as the perpetrator (T. 893).  Petitioner's subsequent confession to police matched the events described by the victims (T. 1126-30).

---

consent to search his home cannot be construed as a continuing consent to search his residence for the indefinite future at the discretion of the police.  Nothing in the conversation leading to the consent, or on the form itself, suggests that the consent applied to multiple distinct searches over a substantial period of time." (H. Op. at 7-8).

[4] Numbers preceded by "T." refer to the transcript of Petitioner's October-November, 2004 trial.

*The Loretta McCreight Robbery*

Petitioner robbed Loretta McCreight on November 14, 2002 in Elmont.  Ms. McCreight testified that the perpetrator held a butcher knife and demanded her purse and keys (T. 500-03, 513, 516).  After taking both from the victim, the perpetrator walked toward 115th Terrace (T. 504).  The victim's purse was found one block away from Petitioner's home at 115th Terrace and Parkway Drive, and her keys were found in the bushes in front of her house (T. 524-26).  Fifteen dollars were missing from the purse (T. 508).  Petitioner's confession matched Ms. McCreight's account, namely that he used a large kitchen knife to rob a woman of her purse and keys, took $15 from the purse, threw the keys in the victim's bushes and tossed the purse on a sidewalk by 115th Terrace (T. 1126-28).

*The Bank of New York Attempted Robbery*

On November 26, 2006, Petitioner attempted to rob the Bank of New York in Elmont. Bank employees witnessed the perpetrator grab a security guard from behind and hold a big, silver butcher knife up to his neck (T. 684-687, 699-702, 703-05, 725-29, 742-46, 762).  The security guard struggled with the perpetrator, who was trying to get into a locked teller station (T. 688-89, 705, 728, 761).  The perpetrator subsequently yelled, "[e]verybody get down," and tried to open a second teller door that was locked before running out of the bank (T. 689-90; 706; 748; 758-60).  The security guard had to be treated at the hospital for deep cuts he suffered to his hands (T. 764-70).  Petitioner later confessed to this attempted robbery (T. 1119-22).

*The Sunoco Gas Station Robbery*

Petitioner robbed a Sunoco gas station in Elmont on November 27, 2002.  Petitioner entered the store, raced through the opening of the cashier counter, and put a steak knife against the clerk's neck (T. 419, 423, 453, 611, 614-15).   The perpetrator pushed the clerk and

threatened to cut her "fuckin throat" if she did not open the register and give him the money (T. 421-24; T. 615). The robber took all of the bills from the cash register, including a security bill,[5] or "bait bill" before running out of the store (T. 424-25, 427, 1027). The manager of the Sunoco station calculated that $570 dollars had been taken from the register and gave the police the serial number of the "bait bill" that had been taken from the register (T. 469-483, 1012-16, 1027). The police recovered the "bait bill" from Petitioner's wallet the next day (T. 1027). Petitioner later confessed to the robbery (T. 1122-24).

The jury found Petitioner guilty of all seven counts against him (T. 1369-70). The sentencing court imposed concurrent 25-year sentences for the five counts of robbery in the first degree, a consecutive five-year sentence for the attempted robbery in the first degree, and a concurrent two-year sentence for the assault in the second degree (S. 6-8).

### C. Direct Appeal

Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"), through counsel, on the following four grounds: (1) the hearing court erroneously denied Petitioner's motion to suppress evidence seized from his home; (2) the hearing court erroneously denied Petitioner's motion to suppress his statement to the police; (3) Petitioner's guilt was not proven beyond a reasonable doubt, and the verdict was against the weight of the evidence; (4) Petitioner's sentence was unduly harsh and excessive. *See People v. Edwards*, 46 A.D.3d 698 (2d Dept. 2007).

The Appellate Division affirmed Petitioner's conviction, holding that: (1) Petitioner had voluntarily consented to a search of his residence; (2) Petitioner had knowingly and voluntarily

---

[5] A security bill, or "bait bill", is a dollar bill, the serial numbers of which have been recorded by the owner of a business to serve as proof of a suspect's involvement in a robbery based on the suspect subsequently being found in possession of the security bill (T. 424-25).

waived his *Miranda* rights prior to giving statements to law enforcement; (3) the evidence at trial was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt for all counts for which he was convicted; (4) the verdict was not against the weight of the evidence; and (5) Petitioner's sentence was not unduly harsh and excessive. *Id.* at 699.

On February 29, 2008, the New York Court of Appeals denied Petitioner's application for leave to appeal. *People v. Edwards*, 10 N.Y.3d 764 (2008).

### D. State Collateral Attacks

Petitioner filed a *pro se* motion in New York Supreme Court (Nassau County) to vacate his conviction pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10 on the grounds that: (1) Petitioner's trial counsel was ineffective because counsel: (a) discouraged him from testifying at trial; (b) failed to pursue beyond pretrial hearings the argument that the police had wrongfully denied Petitioner a chance to telephone his attorney after his arrest; and (c) failed promptly to notify Petitioner that his direct appeal had been denied, which almost cost Petitioner his right to appeal further; (2) the trial court erred in failing to conduct a competency hearing after Petitioner notified the court that he had been physically abused by Nassau County Corrections Officers while in prison; and (3) the prosecution violated the pretrial suppression order by putting in evidence at trial relating to the Queens Robbery (Petitioner's January 1, 2008, § 440.10, Motion to Vacate ("Pet'r 1st § 440 Mem.") at 1-6). On March 10, 2008, the court (Berkowitz J.) denied Petitioner's motion (Order dated March 10, 2008).

Petitioner subsequently filed, *pro se*, a second motion to vacate his conviction, which the court labeled a "motion to reargue" (Petitioner's March 18, 2008, § 440.10, Motion to Vacate ("Pet'r 2nd § 440 Mem.")). Petitioner argued that newly discovered evidence, revealed to him on March 14, 2008, indicated that unidentified Nassau County detectives intended falsely to

charge him with committing two additional robberies in or around Elmont (Pet'r 2nd § 440 Mem. at 1-2).   On May 29, 2008, the court (Berkowitz J.) issued an opinion denying Petitioner's motion because Petitioner's purported new evidence was "unattributed, uncorroborated, hearsay, which does not reach the necessary legal level to set aside a verdict."  (Order dated May 29, 2008 at 2).

Petitioner then applied to the Appellate Division for leave to appeal from the court's denials of both of his motions to vacate.  On August 21, 2008, the Appellate Division denied Petitioner's leave application (Soffer Aff. at 12).

### E.  Instant Petition for Writ of Habeas Corpus

On January 22, 2009, Petitioner timely submitted the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition for Writ of Habeas Corpus ("Dkt. 1")).  Construed liberally,[6] Petitioner seeks relief on the following grounds: (1) the physical evidence introduced at trial was obtained in violation of his Fourth Amendment rights and thus should have been suppressed; (2) the written statements he gave to the police should have been suppressed at trial because they were obtained unconstitutionally; (3) the evidence at his trial was unreliable and of insufficient weight, and his guilt was not proven beyond a reasonable doubt; (4) his sentence was harsh and excessive; (5) he received ineffective assistance of trial counsel; (6) he suffered from prosecutorial misconduct in the forms of illegal trial tactics and racial discrimination in selecting a jury; (7) the trial court erroneously denied him a competency hearing; (8) his Sixth Amendment right to counsel was violated on the night of his arrest; (9) evidence introduced at

---

[6] Because Petitioner is proceeding *pro se*, the Court construes his submissions liberally to raise the strongest arguments that they suggest.  *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

his trial was fabricated and contradictory; (10) the trial court ignored the speedy trial violations and improperly refused to conduct a hearing to determine the reasonableness of any pre-indictment delay by the prosecution; and (11) newly-discovered evidence demonstrates that the prosecutor withheld *Brady* material from Petitioner (Dkt. 1 and Memorandum of Law in Support of Petition ("Dkt. 2")).

Petitioner subsequently applied for certain discovery (Pet'r Letter dated May 19, 2009 ("Dkt. 17")), moved for a "stay and abeyance" in order to exhaust an additional claim in state court (Pet'r Letter dated Mar. 22, 2013 ("Dkt. 32")), and requested (Pet'r Letter dated Jan. 2, 2013 ((Dkt. 28")), and was granted the opportunity to brief an additional ground (12) for relief based on "vindictive sentencing" (*See* Docket Entry dated December 5, 2012).

## DISCUSSION

### I.    Motion for Discovery

Petitioner's motion for discovery is pending before this Court.  Specifically, Petitioner seeks:  (1) all statements alleged to have been made by Petitioner relevant to his case, whether or not they were used or presented at trial; (2) all *Brady* material pertaining to the Nassau Robberies; (3) to depose personnel at the Queens 105th Precinct regarding policies relating to audio and video recordings of interrogations; (4) to depose Ashima Thomas, an employee at the Bank of New York, regarding the robbery that occurred at the Bank of New York for which Petitioner was convicted; (5) to depose Officer LoPiccolo regarding his entry into Petitioner's home on the date of Petitioner's arrest; (6) to depose Detectives Sorensen and Byrnes regarding Petitioner's interrogation at the Queens 105th Precinct; (7) to depose his "trial prosecutor with regard to jury selection challenging techniques" used at trial (Dkt. 17 at 9-10).  Respondent opposes these discovery requests.

"[A] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003). Rule 6(a) of the § 2254 Rules provides that a habeas petitioner "shall be entitled to invoke processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." 28 U.S.C. § 2254, Rule 6(a); *see also Bracy*, 520 U.S. at 904.

A petitioner bears a heavy burden in establishing a right to discovery. *Bracy*, 520 U .S. at 904. However, "discovery may be granted upon a showing of good cause." *Drake*, 321 F.3d at 345. In order to show good cause, a petitioner must present specific allegations that give the Court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Denial of a petitioner's request is appropriate "where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (citation omitted); *see also Charles v. Artuz*, 21 F.Supp.2d 168, 170 (E.D.N.Y. 1998). Generalized statements are not sufficient to establish the requisite "good cause." *See Gonzalez v. Bennett*, 00-CV-8401, 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001); *Green v. Artuz*, 990 F.Supp. 267, 271 (S.D.N.Y. 1998); *Munoz v. Keane*, 777 F.Supp. 282, 287 (S.D.N.Y. 1991), *aff'd sub nom., Linares v. Senkowski*, 964 F.2d 1295 (2d Cir. 1992). Rule 6 does not license a petitioner to engage in a "fishing expedition" by seeking documents "merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error." *Charles*, 21 F.Supp.2d at 169.

Here, Petitioner's discovery application is merely a list of his seven discovery requests without any discussion of their potential utility.  The requests are broad and speculative, and thus do not form the basis for good cause.  *See White v. Rock*, 10-CV-5163, 2013 WL 1767784 (E.D.N.Y. Apr. 22, 2013).   Furthermore, all of the information that Petitioner seeks to discover would have been produced or elicited during the state criminal proceedings below, and Petitioner neither claims nor demonstrates any basis for concluding that he did not receive such information, to the extent it existed.  Since Petitioner has not alleged, let alone demonstrated, specifically how the discovery he requests might advance his petition, the request for discovery is denied.  *See Hirschfeld*, 215 F.R.D. at 465.

## II.     Stay and Abeyance

Petitioner seeks a "stay and abeyance" so that he may return to state to court to exhaust what he identifies as a Fourth Amendment violation claim based on an alleged "pre-arraignment interrogation" violation (Dkt. 32).  Although Petitioner did not raise this claim in his original petition, the Court liberally construes Petitioner's motion as an application to both stay this proceeding and amend his § 2254 petition to include this additional claim.  *See Acosta v. Rock*, 11-CV-1071, 2011 WL 6951222 (E.D.N.Y. Dec. 29, 2011) (citing *Littlejohn v. Artuz,* 271 F.3d 360 (2d Cir. 2001)).

A district court should only grant a stay and abeyance in "limited circumstances" where the petitioner demonstrates "good cause for the petitioner's failure to exhaust his claims first in state court" and, even then, only where the unexhausted claims are not "plainly meritless." *Rhines v. Weber,* 544 U.S. 269, 277 (2005)*; see also Williams v. Bradt,* 10–CV–3910, 2011 WL 531732, at *2 (E.D.N.Y. Feb.8, 2011) (denying motion to stay where petitioner offered no good cause for a delay)).

Petitioner has failed both to demonstrate good cause for the delay in bringing his claim and that his claim is anything but plainly meritless.  Liberally construed, Petitioner argues that he was questioned under an illegal interrogation program in Queens but only became aware of this violation due to recent news coverage.  It is true, as Petitioner suggests, that one interrogation tactic employed by the Queens District Attorney's Office has recently come under criticism (the "Program").[7]  The Program has led to at least one reversal on direct appeal, in *Dunbar*, on which Petitioner relies.  *People v. Dunbar*, 104 A.D.3d 198 (holding that defendant's statement obtained pursuant to the Queens District Attorney's Office program under which arrested individuals were interviewed just prior to arraignment should have been suppressed as the program's procedure—whereby suspects were read a number of statements prior to being advised of their *Miranda* rights—did not effectively secure defendant's fundamental constitutional privilege against self-incrimination and the right to counsel).

However, Petitioner's reliance on *Dunbar* is misplaced.  First, Petitioner was not interrogated under the Program.   Petitioner was arrested, interrogated and arraigned in 2002; the Program was not implemented until 2007.  *See infra* at n. 7.  And, even were the Program in existence when officers interrogated Petitioner, Petitioner would have to prove that he *was* the victim of an improper interrogation, not merely that he *could have been* the victim of an improper interrogation.  He has not met that burden.

In any event, to the extent that Petitioner is arguing that he *was* the victim of an improper interrogation, Petitioner does not need a stay to bring such a claim.  In substance, it is

---

[7] Though Petitioner does not specify which news stories brought the issue to his attention, he could have cited any number of sources.  *See e.g.,* Wendy N. Davis, *Queens Justice: Borough DAs Criticized for Probing Suspects Before Miranda Rights*, ABA JOURNAL (Nov. 1 2012, 3:30 AM), http://www.abajournal.com/magazine/article/queens_justice_boroughs_das_criticized_for_probing_suspects_before_miranda/.

already part of the instant petition.   Petitioner's second ground for relief is that his statements to the police should not have been admitted at trial because they were unconstitutionally obtained. The Court has reviewed this claim in depth *infra* at IV.B, and finds it lacking.  Petitioner has not made the good cause showing necessary for a stay and abeyance to exhaust this claim.  His request for a stay and abeyance is therefore denied.

### III.   Applicable Habeas Corpus Standards

Under 28 U.S.C. § 2254, a federal district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if his appeals were decided on the merits.  *See e.g., Philbert v. Brown*, 11-CV-1805, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012).

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," such that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of State of N.Y.,* 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (citations and internal quotation marks omitted).

A petitioner is not required to cite "book and verse on the federal constitution" in order for a claim to be fairly presented. *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971) (citations omitted)). Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the "substantial equivalent of the habeas claim." *Id* (citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he still may fairly present his federal claim to the state court even by alleging a pattern of facts that generally give rise to constitutional analysis. *See id.* at 194.

AEDPA provides an exception to the general exhaustion requirement. A district court may, in its discretion, deny on the merits habeas petitions containing both exhausted and unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). The state may also waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3).

## B. Procedural Default

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citations omitted). Where the state court has actually and explicitly relied upon procedural default to dispose of a claim, there

is an "adequate and independent state ground" for the judgment, and federal habeas review is prohibited. *Harris v. Reed,* 489 U.S. 255, 260 (1989); *see also Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir. 2001) (state court's reliance must be "unambiguous and clear from the face of the opinion"); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (reasoning that states have an interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors").

To overcome the bar to federal habeas review of a claim that has been procedurally defaulted in state court, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748-50). The court may find cause where "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman*, 501 U.S. at 753. Once cause is established, the petitioner must also demonstrate "prejudice" by showing that "there is a reasonable probability that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (citation and internal quotation marks omitted). If the petitioner is unable to show cause and prejudice, his procedural default may only be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.,* "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo,* 513 U.S. 298, 321 (1995)).

## C. AEDPA Deference

Where a state court reaches the merits of a claim asserted in a § 2254 habeas petition, the state court's decision is entitled to a deferential standard under AEDPA.  Under AEDPA, an application for habeas corpus relief should not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d); *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir. 2002).

The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." *Ryan,* 303 F.3d at 245 (citing *Sellan v. Kuhlman*, 261 F.3d 303, 309-310 (2d Cir. 2001) (internal quotation marks, alterations, and emphases omitted)).  The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

## IV.    Proffered Grounds for Habeas Relief

Petitioner's instant petition pursuant to 28 U.S.C. § 2254 cites twelve potential grounds for habeas relief.  Respondent concedes that Petitioner's claims are timely.  Respondent contends, however, that the petition should be denied because all of Petitioner's claims are either unexhausted, procedurally barred, or without merit.

## A. Suppression of Physical Evidence (Ground 1)

Petitioner alleges that his Fourth Amendment rights were violated when police searched his home without his consent and without a warrant (Dkt. 1 at 7; Dkt. 2 at 2, 4; *see also* Petitioner's Brief on Direct Appeal ("Pet'r App. Br.") at 35).  Thus, Petitioner claims, the

hearing court erred by failing to exclude from trial any evidence collected from his home on the night of the arrest. *Id.* Petitioner relies on *Mapp v. Ohio*, 367 U.S. 643, 657 (1961), in which the Court held that physical evidence seized by law enforcement officers in violation of the Fourth Amendment is barred by the "exclusionary rule" (Pet'r App. Br. at 35). This claim has been properly exhausted, and it is not procedurally defaulted; however, his Fourth Amendment claim is barred from review by the doctrine set forth in *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone*, the Supreme Court declined to extend the "exclusionary rule" to habeas cases and held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 483. Interpreting *Stone,* the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts within this Circuit have "repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims." *Kelly v. Griffin*, 12-CV-3384, 2012 WL 6569769 (E.D.N.Y. Dec. 14, 2012) (citing *Capellan v. Riley,* 975 F.2d 67 (2d Cir. 1992); *Guzman v. Greene,* 425 F.Supp.2d 298 (E.D.N.Y. 2006); *Crispino v. Allard,* 378 F.Supp.2d 393 (S.D.N.Y. 2005)).

Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim both at the suppression hearing and to the Appellate Division. Where a petitioner raises his "Fourth Amendment claims in these state fora," a petitioner has demonstrated "that state process

was available, and indeed, that he availed himself of that process." *White v. West*, 04-CV-02886, 2010 WL 5300526 (E.D.N.Y. Dec. 6, 2010) (citing *Singh v. Miller,* 104 F. Appx. 770, 772 (2d Cir. 2004)).  Here, not only did Petitioner litigate his claim, he successfully convinced the hearing court to suppress evidence that the police recovered from his home while he was detained at the 105th Precinct (H. Op. at 5).  Thereafter, Petitioner had the opportunity to challenge, albeit unsuccessfully, the unfavorable aspects of the hearing court's decision on appeal to the Appellate Division.  *See People v. Edwards*, 46 A.D.3d at 698 (affirming the hearing court's determination that petitioner voluntarily consented to the search of his residence).

Petitioner has not demonstrated any infirmity with the courts' processes or determination of his Fourth Amendment claim other than his disagreement with the result.   Petitioner had an opportunity to litigate his Fourth Amendment claim fully and fairly in state court, and therefore his claim is barred from federal habeas review.  *See Grey v. Hoke*, 933 F.2d 117, 121 (2d. Cir. 1991).

In any event, Petitioner's Fourth Amendment claim is meritless and does not warrant habeas corpus relief.  The Supreme Court has held that there is no constitutional violation where a search is conducted on the basis of consent.  *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (holding that a search conducted pursuant to consent is an exception to the Fourth Amendment's warrant requirement); *see also United States v. Garcia*, 56 F. 3 418, 422 (2d Cir. 1995).   The hearing court found that the police officers on scene told Petitioner that he was entitled to decline their request to search his house and that they would not proceed without oral and written consent (H. Op. at 3, 6).  Petitioner signed the consent form, which also noted that he was entitled to decline, and provided oral consent (H. Op. at 3, 6).  The Appellate division affirmed, holding that Petitioner had voluntarily consented to a search of his residence.  The state

courts' decisions were not based on an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent.   *See* 28 U.S.C. § 2254(d)(1)-(2).

**B.   Suppression of Petitioner's Post-Arrest Statements (Ground 2)**

Petitioner alleges that his *Miranda* waiver was not voluntarily given (Dkt. 1 at 7; Dkt. 2 at 2).   Therefore, Petitioner claims, the hearing court erred in refusing to suppress statements he made at the 105th Precinct following his arrest.   *Id.*   On direct appeal, Petitioner presented this argument to the Appellate Division, which, like the hearing court, rejected Petitioner's claim. *People v. Edwards*, 46 A.D.3d 698, 699, 847 N.Y.S.2d 601, 602 (2007).   As this claim was decided on the merits in state court, it is entitled to AEDPA deference.   28 U.S.C. § 2254 (d).[8]

To be valid, an accused's waiver of his right against self-incrimination and right to counsel must be knowingly and intelligently made.   *See People v. Williams*, 62 N.Y.2d 285, 288 (1984); *see also Miranda v. Arizona*, 384 U.S. 436 (1966).   When evaluating the voluntariness of a confession, the Court must analyze the totality of the circumstances.   *Green v. Scully,* 850 F.2d 894, 901 (2d Cir. 1988); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).   Factors to be considered include the: (a) personal characteristics of the accused; (b) the conditions of the interrogation; and (c) the conduct of law enforcement officials, "notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." *Nelson*, 121 F.3d at 833 (citing *Green*, 850 F.2d at 901).

---

[8] Respondent argues that this claim is not properly exhausted because Petitioner did not fairly present his claim in the state courts and it should therefore be treated as if it were decided under state procedural rules, i.e., not on the merits (Resp. Br. at 8-9) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (additional citations omitted)).   The Court disagrees.   Though Petitioner's *pro se* habeas petition is inartfully pled, the substance of Petitioner's argument tracks his presentation on direct appeal.   This is especially so given that "the complaint of a *pro se* litigant is to be liberally construed in his favor."   *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 2005). Thus, the Court finds that this claim is properly exhausted.

The voluntariness of a confession is "a legal question requiring independent federal determination." *Nelson*, 121 F.3d at 833 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 287 (1991)); *see also Mincey v. Arizona,* 437 U.S. 385, 396 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]nstead, this Court is under a duty to make an independent evaluation of the record"). However, findings of fact underlying a legal determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Nelson*, 121 F.3d at 833-34. Petitioner bears the burden of rebutting those determinations by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001). Only if the material facts were not adequately developed by the state court, or the factual determination is not fairly supported by the record, may the district court set aside the presumption of correctness. *Nelson*, 121 F.3d at 833.

The hearing court found, *inter alia*, that: Petitioner was properly advised of his *Miranda* rights; that he was given something to drink during his interrogation; that the police kept their weapons concealed from Petitioner's view; and that the interrogation process was relatively short and completed by midnight (H. Op. at 7). As such, the court concluded that there was no evidence of coercion, Petitioner's statements were made voluntarily, and that the statements would therefore be admissible at trial.[9] *Id.* Petitioner then appealed. On appeal, the Appellate Division determined that, "[t]he evidence at the hearing, including evidence of the duration and condition of the defendant's detention, as well as the attitude and conduct of law enforcement officials toward him, further supported the finding that the defendant made a knowing and voluntary waiver of his rights prior to giving statements to the law enforcement officials which

---

[9] Testimony at trial established that, though the written statements obtained from Petitioner were physically drafted by detectives based on conversations they had with Petitioner, Petitioner voluntarily signed each written statement after reading it and being given the opportunity to correct any inaccuracies in the statements (H. 122-35, 147; T. 1114-19).

inculpated him in a series of robberies." *People v. Edwards*, 46 A.D.3d 698, 699, 847 N.Y.S.2d 601 (2007) (citations omitted).

Petitioner has not demonstrated that the material facts were inadequately developed at the state court hearing or that the record does not fairly support the court's factual determinations. In the absence of such a showing, this Court presumes the correctness of the state court's findings of fact with respect to the circumstances of Petitioner's interrogation and the voluntariness of his *Miranda* waiver.[10]  *See Nelson*, 121 F.3d at 835 (citing *Miller v. Fenton* 474 U.S. 104, 112 (1985); *Green*, 850 F.2d at 900); *see also Schreter v. Artuz*, 225 F. Supp. 2d 249, 256 (E.D.N.Y. 2002).  Based on the totality of the circumstances, the state courts' determination that Petitioner's *Miranda* statements were admissible was a reasonable application of federal law. *See* 28 U.S.C. § 2254(d).  Therefore, Petitioner is not entitled to habeas relief on this ground.

### C.  Legal Sufficiency and Weight of the Evidence (Grounds 3 & 9)

Petitioner argues that the evidence adduced at trial was insufficient to support his conviction (Dkt. 1 at 9; Dkt. 2 at 5, 7).  Petitioner previously presented this argument, through counsel, on direct appeal (Pet'r App. Br. at 41-44).  The Appellate Division affirmed Petitioner's conviction, finding that, viewed in the light most favorable to the prosecution, the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt on all counts for which

---

[10] Petitioner also claims for the first time in petition that he made no statements whatsoever to the police and that the detectives involved contrived the statements based on information obtained from victims, not Petitioner (Dkt. 1 at 7; Dkt. 2 at 2-3).  This claim is procedurally barred as it was not fairly presented to the state courts, *Picard v. Connor*, 404 U.S. 270, 278.  In any event, this Court presumes correct the state courts' findings of fact with respect to the validity of the statements given by Petitioner to detectives.  *See Nelson*, 121 F.3d at 835.

he was convicted.[11]  *People v. Edwards*, 46 A.D.3d 698, 699, 847 N.Y.S.2d 601 (2007). The state court's decision on the merits is entitled to AEDPA deference.  28 U.S.C. § 2254(d).

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence to support his state conviction.  *See Aguilar*, 585 F.3d at 656; *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997).  On habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Aguilar*, 585 F.3d at 656; *Flowers v. Fisher,* 296 Fed. Appx. 208, 210 (2d Cir. 2008).

The People proved the essential elements for all five counts of robbery in the first degree. Under New York law, a defendant is guilty of robbery in the first degree where he forcibly steals property, and during the commission of the crime or immediate flight thereof, either: (1) caused serious physical injury to any person who is not a participant of the crime; or (2) was armed with a deadly weapon; or (3) used or threatened the immediate use of a dangerous instrument; or (4) displayed what appeared to be a firearm.  Penal Law § 160.15.  At trial, the People proved, *inter alia*, that Petitioner forcefully took cash from victims during four robberies—at a Citgo gas station, at the Tudor Cleaners, in Loretta McCreight's driveway, and at a Sunoco gas station— while armed with and threatening the use of a deadly weapon, specifically a knife or gun.  *See supra* at I.B.

---

[11] The Appellate Division applied the appropriate standard. On direct appeal, "[a] defendant raising a sufficiency challenge ... bears a heavy burden because a reviewing court must consider the evidence in the light most favorable to the prosecution and uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Aguilar,* 585 F.3d 652, 656 (2d Cir. 2009) (internal citations omitted, emphasis in original).

Likewise, the People also proved the essential elements of attempted robbery in the first degree (Count Two) (Penal Law § 110 and 160.15) and assault in the second degree (Count Three) (Penal Law § 120.05(6)).   Under New York law, a defendant is guilty of attempted robbery in the first degree when, with the intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.  *See* Penal Law § 110.  A person is guilty of assault in the second degree when "[i]n the course of and in furtherance of the commission or attempted commission of a felony, . . . he causes physical injury to a person other than one of the participants."  Penal Law § 120.05(6).  At trial, the People proved that on November 16, 2002, Petitioner attempted to rob the Bank of New York in Elmont and that during the course of such attempted robbery, he assaulted a bank security guard (T. 684-687, 699-705, 725-29, 742-46, 762, 764-70).  *See supra* at I.B.

Viewing the evidence in the light most favorable to the prosecution, the Court finds that a rational trier of fact could have found the essential elements of each crime for which Petitioner was convicted beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319; *Aguilar*, 585 F.3d at 656; *Flowers* 296 Fed. Appx. at 210.  For each crime, the People presented eyewitness accounts of the robberies and identifications of Petitioner, coupled with Petitioner's own confessions, the details of which corroborated the eyewitnesses' testimony.  *See supra* at I.B.   Thus, the Appellate Division's decision was not based on an unreasonable determination of the facts presented, nor was it based on an unreasonable application of federal law.   *See* 28 U.S.C. § 2254(d)(1)-(2).

Petitioner also claims that the verdict was against the weight of the evidence.[12]  Such a claim is not cognizable on habeas review.  *See McKinnon v. Superintendent, Great Meadow Correctional Facility,* 422 Fed. Appx. 69, 75 (2d Cir. 2011); *Correa v. Duncan,* 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001).  Unlike a legal sufficiency claim, which is based on principles of due process, a claim that a verdict is against the weight of the evidence is grounded solely on state law, *People v. Bleakley,* 69 N.Y.2d 490 (N.Y.1987), and is thus unreviewable in a federal habeas corpus proceeding.  *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991), *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir. 1996).  Petitioner is therefore not entitled to federal habeas corpus relief on this ground.

### D.  Unduly Harsh and Excessive Sentence (Ground 4)

Petitioner claims that his sentence was unduly harsh and excessive in view of his protestations of innocence, lack of a criminal history, and youth (Dkt. 1 at 10; Pet'r App. Br. at 52).  The Appellate Division found that Petitioner's sentence was not unduly harsh or excessive. *People v. Edwards*, 46 A.D.3d 698 (2d Dept. 2007).  Because the Appellate Division adjudicated Petitioner's claim on the merits, AEDPA deference applies.  28 U.S.C. § 2254(d).

Petitioner's claim is not cognizable on federal habeas corpus review.  An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.  *Pina v. Kuhlmann,* 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (citing *White v. Keane,* 969 F. 2d 1381, 1383 (2d Cir. 1992).  Here, the sentences imposed were all within the ranges prescribed by New York law for robbery in the first degree, attempted

---

[12] As separate ground for relief (Ground 9), Petitioner contends that "[i]identification and evidence [were] improperly fabricated so as to appear [to] validly support [his] alleged confession." Dkt. 1 at 18.  Raising the best possible argument for Petitioner, this amounts to a challenge to the credibility of the detectives who took Petitioner's statement, and testified at the suppression hearing and at trial that the statements were voluntary.  As such, it is incorporated into Petitioner's weight of the evidence claim.

robbery in the first degree, and assault in the second degree.  *See* New York Penal Law §§ 70.02(1)(a)–(c), 70.02(2)(a), 70.02(3)(c), 70.25, 70.45(2)(f), 110.00, 120.05, 160.15.  Therefore, no federal constitutional issue is presented.  *White*, 969 F. 2d at 1383.  Because Petitioner's sentence was well within the legally prescribed ranges under state law, the Appellate Division's determination that Petitioner's sentence was not unduly harsh or excessive was not contrary to, nor an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  Accordingly, Petitioner's application for habeas corpus relief on this ground is denied.

### E.  Ineffective Assistance of Counsel (Ground 5)

Petitioner argues that he was denied effective assistance of counsel at trial because counsel allegedly used manipulative and intimidating tactics to dissuade Petitioner from testifying at trial (Dkt. 1 at 16; Dkt. 2 at 6).  Petitioner previously raised this claim on his motion to vacate the trial court's judgment under N.Y.C.P.L. § 440.10, and it was summarily denied (Order dated March 10, 2008).  Because "[a] summary disposition constitutes a disposition 'on the merits'[,]" the state court's decision is entitled to AEDPA deference.  *Hawthorne v. Schneiderman*, 695 F.3d 192, 196 (2d Cir. 2012).

Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 668, 680 (1984), to prevail on a claim for ineffective assistance of counsel, a petitioner must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

Strickland's first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments." *Id.* (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision[.]" *DeLuca v. Lord,* 77 F.3d 578, 588 n. 3 (2d Cir. 1996).

*Strickland's* second prong requires a petitioner to demonstrate prejudice, namely that there exists a "reasonable probability" that, but for the deficiency, "the result would have been different." *Id.* at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermine[s] confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir. 2001). "[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695; *Henry v. Poole,* 409 F.3d 48, 63-64 (2d Cir. 2005). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691.

Petitioner alleges that he wanted to testify at trial, but that his counsel "blocked" him from taking the stand through the use of "fear and manipulative tactic[s] such as refusing to even guide me on how to approach and sit in the stand to testify and other etiquette." (Dkt. 1 at 16). A criminal defendant has a constitutional right to testify on his own behalf. *Rock v. Arkansas,* 483 U.S. 44, 49 (1987)). "That right is so fundamental and personal to the defendant that it is waivable only by the defendant." *Brown v. Artuz,* 124 F.3d 73, 77-78 (2d Cir. 1997) (citation and quotation marks omitted). In fact, an attorney has an affirmative duty to advise a defendant with respect to the exercise of that right. *Rega v. United States,* 263 F.3d 18, 21 (2d Cir. 2001). The attorney may advise the defendant against testifying, but the ultimate decision is up to the defendant. *Brown*, 124 F.3d at 79.

Other than Petitioner's allegation that his counsel blocked him from testifying at trial, neither side has provided any evidence relating to the first *Strickland* prong, *i.e.*, that counsel's performance was objectively unreasonable. Petitioner's trial attorney rebuffed Respondent's request (pursuant to this Court's order) for an affidavit addressing the merits of Petitioner's claim (Soffer Aff. at 16). However, even taking Petitioner's allegation that his counsel dissuaded him from testifying as true, and even assuming, *arguendo*, counsel did so in a way that was outside the range of professional competence, Petitioner still fails to satisfy the second *Strickland* prong.

Even construed liberally, Petitioner's only allegation that relates to the prejudice prong is the following unsupported claim: "Had I been able to testify I know the outcome would have been completely different." (Dkt. 1 at 16). Petitioner's belief alone is insufficient to satisfy *Strickland's* second prong. Petitioner has not presented any evidence that "there is a reasonable probability that" the result of the trial would have been different had he testified. *See Strickland*, 466 U.S. at 694. Petitioner does not detail the contents of the testimony he would have provided,

let alone demonstrate how his failure to take the stand compromised the outcome of trial. Indeed, given the considerable evidence of Petitioner's guilt, including his own detailed confessions as to each robbery, there is no reason to believe that his testimony at trial would have favorably affected the outcome of the trial. Even assuming *arguendo* that Petitioner would have testified that his confession was involuntarily obtained or falsified by the detectives, the Court finds that there was no reasonable probability that the jury would have credited that testimony, given the contrary testimony of the officers and the substantial eyewitness and physical evidence establishing Petitioner's commission of multiple armed robberies. Therefore, the state court's determination was not contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). Accordingly, habeas relief on this ground is unwarranted.

## F. Prosecutorial Misconduct (Ground 6)

### 1.    The State Court's Application of *Batson*

Petitioner alleges that the prosecution acted in violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), by deliberately excluding all black males from the jury (Dkt. 1 at 16; Dkt. 2 at 3, 5). This claim is procedurally barred from review and, in any event, meritless.

Petitioner did not raise this claim on direct appeal or in his state collateral appeals to vacate his judgment. Because the claim is reviewable from the record (T. 31-267), and Petitioner has already completed his direct appeal, he can no longer obtain review of this claim in state court. *See* N.Y. Crim. Proc. Law §§ 440.10(2)(b),(c). Therefore, the claim is considered to be exhausted, yet procedurally barred from federal habeas review. *See Grey*, 933 F.2d at 120.

In any event, Petitioner's claim is meritless. The Equal Protection Clause forbids a prosecutor from challenging jurors on account of their race. *Batson*, 476 U.S. at 89. Under *Batson*, once a defendant opposing a peremptory strike establishes a *prima facie* case that the

prosecutor impermissibly challenged a prospective juror for a racially discriminatory purpose, the burden shifts to the prosecutor to articulate a race-neutral reason for the peremptory challenge. *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991); *Batson,* 476 U.S. at 97.   It does not matter whether the prosecutor presents worthy reasons; the Federal Constitution requires only that the prosecutor not strike a juror because of the juror's race. *Purkett v. Elem*, 514 U.S. 765, 768 (1995).  If the prosecutor comes forward with a race-neutral explanation, then the burden shifts back to the defendant to prove that explanation was merely a pretext for purposeful discrimination. *Id.* at 768.

"[W]hen reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia,* to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Galarza*, 252 F.3d at 635.

Here, the trial court properly applied the *Batson* analysis.  Petitioner challenged the prosecutor's use of four peremptory challenges, two of which involved black males (T. 109-12). The prosecutor subsequently provided race-neutral reasons for her use of peremptory challenges for those particular jurors (T. 110-11).  With respect to the first juror, the prosecutor's rationale was that he demonstrated a negative attitude towards police (T. 110).  The court accepted this race neutral reason, and denied Petitioner's *Batson* challenge to the peremptory strike (T. 110). With respect to the second juror, the prosecutor cited the fact that the juror had witnessed his mother held-up at gunpoint, no arrest was made, and the juror "didn't seem particularly happy about it" (T. 110-11).  The court did *not* accept the prosecutor's reason for striking the second

juror, and proposed to seat him on the jury (T. 111-12).   At that point, however, Petitioner withdrew his *Batson* challenge relating to the second juror (T. 112).

This Court finds that Petitioner has not made a showing sufficient to overcome the presumption of correctness owed to the trial court.   The state court's *Batson* analysis did not involve an unreasonable application of federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Indeed, the record demonstrates that the trial court exercised appropriate diligence and scrutiny with respect to the jury selection process, even proposing to seat a black juror struck by the prosecutors.   However, Petitioner withdrew his *Batson* challenge as to that juror, thereby waiving any subsequent *Batson* claim.   Accordingly, Petitioner's claim on this ground is denied.

### 2.        The Pretrial Suppression Order

Petitioner claims that prosecution witness, Officer LoPiccolo, gave testimony that violated the hearing court's ruling to exclude information regarding the Queens Robbery from trial (Dkt. 1 at 16).   Petitioner previously raised this claim on his motion to vacate his conviction under N.Y. C.P.L. § 440.10, and it was summarily denied (Order dated March 10, 2008). Because "[a] summary disposition constitutes a disposition on the merits[,]" the state court's decision is entitled to AEDPA deference.   *Hawthorne*, 695 F.3d at 196 (citing *Harrington*, 131 S.Ct. at 784–85.

Habeas corpus relief is available only where there has been a violation of a constitutional right.   28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.   State court rulings on evidentiary matters are generally state law issues and do not implicate federal questions.   *Alfini v. Lord*, 245 F. Supp. 2d 493, 499 (E.D.N.Y. 2003); *Warren v. Miller,* 78 F.Supp.2d 120, 134–35 (E.D.N.Y. 2000). Therefore, in order to successfully challenge an evidentiary ruling, a habeas petitioner must

establish not only that the state court's ruling was erroneous, but that the error rose to the level of a constitutional violation. *Id.* The erroneous admission of unfairly prejudicial evidence amounts to an error of constitutional dimension only when the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

Here, Petitioner claims that the prosecution violated the hearing court's order by allowing Officer LoPiccolo to testify as to information related to the Queens Robbery (Pet'r 1ˢᵗ 440 Mem. at 5; Dkt. 2 at 4). The hearing court ruled, on a pretrial *Molineux* application,[13] that the People were not to elicit testimony about the Queens Robbery at the trial relating to the Nassau Robberies (s*ee* hearing transcript, dated October 5, 2004, at 19-29). At trial, Officer LoPiccolo, while testifying about Petitioner's arrest, mentioned that he had a conversation with another officer "regarding an incident that happened a short while earlier" (T. 820). That statement was the only reference LoPiccolo made touching on the Queens Robbery (T. 815-69). Such a vague statement did not violate the hearing court's ruling, nor does it rise to the level of a due process or other constitutional violation. *See Estelle*, 502 U.S. at 68. Therefore, Petitioner is not entitled to habeas relief on this ground.

### G.  Competency Hearing (Ground 7)

Petitioner claims that the trial court violated his due process rights by failing to order a competency hearing (Dkt. 1 at 17). Petitioner alleges that, before his trial began, he informed the court that he had been physically abused in jail by corrections officers. *Id.* He argues that the court therefore should have conducted a competency hearing at that time to determine "what, if

---

[13] *People v. Molineaux*, 168 N.Y. 264 (1901), deals with a prosecutor's ability to use a defendant's prior crimes to prove an element of the crime for which the defendant is currently on trial.

any, affect" the abuse had on him, (Pet'r 1st 440 Mem. at 4), and that he did not testify, at least in part, due to this pre-trial trauma (Dkt. 2 at 6).  Petitioner previously raised this ground for relief on a motion to vacate the trial judgment under N.Y.C.P.L. § 440.10, and it was denied on the merits (Order dated March 10, 2008).  The state court's decision is therefore entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d).

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.  *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966).  A defendant is incompetent to proceed if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense."  *Drope*, 420 U.S. at 171.  Some degree of mental illness, however, does not necessarily amount to incompetence to stand trial.  *United States v. Vamos*, 797 F.2d 1146, 1150-51 (2d Cir. 1986).

Petitioner has not provided any documentation regarding his mental health at the time of the trial.  However, even taking Petitioner's allegations as true, Petitioner has not shown that he was incapable of comprehending the proceedings against him.  Although Petitioner alleges that the attack unnerved him prior to trial, he specifies only that the alleged attack resulted in "severe injuries to his jaw and face and body" (Pet'r 1st 440 Mem. at 4).  Nothing in the record or even the pleadings, liberally construed, demonstrates that Petitioner was mentally infirm.  Indeed, Petitioner's post-conviction motions and petitions for relief challenging, in detail, every stage of his criminal proceedings, some filed *pro se,* provide evidence that Petitioner was not suffering any mental or cognitive impairment during the pendency of his case and fully understood the nature and object of the proceedings against him.  Petitioner has therefore failed to show that the state court ruling on his 440.10 motion to vacate was not based on an unreasonable determination

of the facts in light of the evidence presented or an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1)-(2).

### H.      Right to Counsel During Interrogation (Ground 8)

Petitioner claims that he was improperly denied the right to counsel during his interrogation at the Queens 105th Precinct (Dkt 1 at 17; Dkt. 2 at 2)).   Specifically, Petitioner argues that he had his "own attorney before [he] even got arrested," and that he was denied contact with her (Dkt. 1 at 17; Dk.t 2 at 2-3).  Petitioner's claim implicates both his Fifth and Sixth Amendment rights.

 Petitioner's Sixth Amendment claim is procedurally barred from habeas review.  While Petitioner did assert this claim in his first motion to vacate judgment, the claim was reviewable from the record (*see* H.111-85) and thus should have been brought on direct appeal to remain properly reviewable.  *See* N.Y. Crim. Proc. Law §§ 440.10(2)(b),(c).  It was not.  Since Petitioner failed to raise this Sixth Amendment claim on direct appeal, and can no longer bring the claim in state court, his claim is exhausted but procedurally barred.  *See Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997).

In any event, Petitioner's claim does not entitle him to habeas relief.  The Sixth Amendment right to counsel is "offense specific" and attaches only after charges have been formally commenced.  *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  Here, Petitioner's Sixth Amendment right to counsel had not yet attached at the time he gave statements to law enforcement because no criminal action against him had commenced.  Thus, Petitioner's claim that he had a private attorney even before his arrest for the instant crimes is irrelevant.  Such representation would not have prevented law enforcement officers from questioning him about new charges unrelated to his previous representation.  *See id.*

Petitioner's claim that he requested, and was denied, counsel during his post-arrest interview implicates his Fifth Amendment right against self-incrimination.  When confronted with custodial interrogation, individuals have the constitutional right, under the Fifth Amendment, to remain silent.  *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (noting that the Fifth Amendment applies to the States by virtue of the Fourteenth Amendment) (citing *Malloy v. Hogan,* 378 U.S. 1, 6 (1964)).  However, this right can be waived.  *See e.g., North Carolina v. Butler*, 441 U.S. 369, 374-76 (1979).  No constitutional violation occurs when an arrestee speaks with law enforcement after he is informed of, and voluntarily waives, his *Miranda* rights.  *See New York v. Quarles*, 467 U.S. 649 (1984).

The evidence presented at the suppression hearing in the underlying state criminal prosecution established that Petitioner was advised of his *Miranda* rights prior to any police questioning (H. Op. at 7).  The police specifically advised Petitioner:  "You have the right to talk to a lawyer before answering any questions or to have a lawyer present at any time.  If you cannot afford to hire a lawyer, one will be furnished you, if you wish.  You have the right to keep silent until you've had the chance to talk with a lawyer."  (H. 119).  Petitioner voluntarily waived these rights and agreed to speak with the police.  *Id.*  He did so orally and in writing (H. 119-20).  In any event, Petitioner never requested to speak to a lawyer (H. 141).  Therefore, the state court's denial of Petitioner's Fifth Amendment claim was not based on an unreasonable determination of the facts in light of the evidence presented, nor was it an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1)-(2).

To the extent Petitioner questions the credibility of the prosecution's witnesses at the hearing, Petitioner has not provided any reason for this Court to depart from the deference it owes the factual determinations of the hearing court.  *See Marshall v. Lonberger*, 459 U.S. 422,

434 (1983) ("28 U.S.C. § 2254 (d) gives federal habeas courts no license to redetermine credibility of witnesses"); *Maggio v. Fulford*, 462 U.S. 111, 113 (1983); *Thomas v. Scully*, 854 F. Supp. 944, 953 (E.D.N.Y. 1994) ("a federal court reviewing a habeas petition generally must presume correct a state court's findings of fact that have been ascertained through a hearing on the merits"); *Schreter v. Artuz*, 225 F. Supp. 2d at 256; *see also* 28 U.S.C. § 2254 (e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct."). Accordingly, Petitioner is not entitled to habeas relief on this ground.

## I. Speedy Trial (Ground 10)

Petitioner claims that the trial court ignored speedy trial violations and erroneously refused to conduct a hearing to determine the reasonableness of any pre-indictment delay by the prosecution (Dkt. 1 at 18; Dkt. 2 at 4). Petitioner presented this claim to the trial court, and it was denied. *People v. Edwards*, Indict. No. 115N-03, Order dated July 12, 2004.

To the extent that Petitioner raises speedy trial violations premised on New York criminal procedural law, a state statutory protection, his claims are not cognizable on federal habeas review. *See, e.g., Bermudez v. Conway*, 09-CV-1515, 2012 WL 3779211 (E.D.N.Y. Aug. 30, 2012); *Hodges v. Bezio,* 2012 WL 607659, *4 (E.D.N.Y. Feb.20, 2012). Accordingly, Petitioner's Section 30.30 speedy trial claims are not a basis for relief. [14]

Construed liberally, Petitioner's submission raises a Sixth Amendment speedy trial claim. This claim is procedurally defaulted. Although Petitioner made a pretrial motion to dismiss the indictment on speedy trial grounds, Petitioner did not raise any speedy trial claim on direct

---

[14] Petitioner also could not in state court, and cannot now, avail himself of a speedy trial claim based on Criminal Procedure Law § 180.80, as the Nassau County charges about which he complains were initiated through a grand jury action, not by the filing of a felony complaint (Dkt. 42, Exhibit 2). Although Petitioner was in custody at the time he was indicted in Nassau County, that incarceration was the result of his pending Queens robbery case. (Dkt. 41, Exhibit 1).

appeal to the Appellate Division or by way of a motion to vacate his conviction.  Having completed the one direct appeal and the one application for leave to appeal to the New York State Court of Appeals to which he was entitled, Petitioner cannot again seek leave to present his claim to the state courts.  *See* N.Y. Crim. Proc. Law. §§ 460.10, 460.20, 460.30(1).  Petitioner's claim is exhausted but procedurally barred from federal habeas corpus review.  *See Grey*, 933 F.3d at 119-21.

In any event, Petitioner has not alleged a cognizable violation of his right to a speedy trial.  It is settled law that a delay in prosecution does not implicate the speedy trial guarantee. *See United States v. Elsbery,* 602 F.2d 1054, 1058 (2d Cir. 1979).  "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the Sixth Amendment."  *United States v. Marion*, 404 U.S. 307, 320 (1971).  The Supreme Court has explained that this is because, until then, "a citizen suffers no restraints on his liberty and is not the subject of public accusation." *Id.* at 321.

Petitioner's arrest on November 28, 2002 arose out of the Queens Robbery.  The criminal action at issue in this petition—the one stemming from the Nassau Robberies—commenced on January 21, 2003, when the Nassau County indictment was returned by the grand jury.  Petitioner was arraigned on the Nassau indictment about thirteen weeks later, on March 4, 2003.  A six-week gap between a petitioner's indictment and arraignment does not constitute the kind of "presumptively prejudicial" delay that triggers speedy trial analysis under the Sixth Amendment. *See Dogget v. United States*, 505 U.S. 647, 652 n. 1 (1992) (noting that delay approaching one year is "generally sufficient" to trigger further analysis).  Petitioner's incarceration during this

period is irrelevant because it resulted from his arrest on the Queens Robbery and was unrelated to charges brought against him for the Nassau Robberies.

The trial court found that the subsequent lapse of time between arraignment and trial was not attributable to the prosecution. *People v. Edwards*, Indict. No. 115N-03, Order dated July 12, 2004. Almost all of the adjournment requests during this pretrial period were made by Petitioner ("Letter and criminal record and court documents as per 6/20/13 order," Docket Entry 40 (sealed)). Petitioner has not demonstrated that the trial court's denial of his speedy trial claim was contrary to, or an unreasonable application of, U.S. Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1)-(2). Therefore, Petitioner is not entitled to habeas relief on this ground.

## J. Brady Material (Ground 11)

Petitioner claims that new evidence discovered after his sentencing shows that the prosecution withheld *Brady* material. Specifically, he alleges that: (1) the prosecution withheld information regarding two other robberies that occurred in same area as the crimes for which Petitioner was convicted; and (2) a corrections officer told Petitioner that Nassau County detectives intended falsely to charge Petitioner with two robberies that occurred near the robberies for which he was convicted. Petitioner previously raised this claim on his second motion to vacate the judgment under N.Y.C.P.L. § 440.10, and it was denied on the merits (Order dated May 29, 2008). The state court's decision is therefore entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d).

Petitioner's claim is meritless.[15] It is unsubstantiated, and his allegations lack the specifics necessary to serve as the basis for relief. Even assuming *arguendo* that such

---

[15] This claim is also arguably unexhausted, but because it is meritless, the Court elects to dismiss the claim rather than to delay the case to permit further applications in the state courts. *See Thompson v. Fischer*, 02-CV-0526, 2003 WL 23198787, at *13 (E.D.N.Y. Oct. 31, 2003).

39

information existed, Petitioner fails to explain how this information constitutes *Brady* material. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963) (*Brady* material consists of evidence favorable to the accused and material to his guilt or punishment).  Liberally construing Petitioner's claims, with respect to the allegedly withheld information about other robberies in the area, he presumably is arguing that disclosure of this information would have enabled him to pursue a defense at trial that the Nassau robberies were committed by the perpetrators of these other robberies, and not him.  This argument, however, requires far too many inferential leaps for which Petitioner provides no support: first, that there were such robberies; second, that the perpetrators of these robberies were identified, arrested or prosecuted; and third, that these perpetrators could have committed the robberies for which Petitioner was convicted.  Indeed, the evidence of Petitioner's commission of the Nassau robberies was so overwhelming that it is inconceivable that Petitioner could demonstrate that the purported information about other robberies would have been material to his guilt.

With respect to Petitioner's claim about the Nassau County detectives' purported intent to frame Petitioner with two additional robberies, this information is, on its face, immaterial given that this clearly never came to pass.  To the extent Petitioner might argue that this alleged plot to frame him was relevant to attacking the credibility of the Nassau detectives in his case, this claim still fails to meet the *Brady* standard because Petitioner gives no indication that these would-be framers were the detectives involved in his prosecution.

Accordingly, the state court's determination that Petitioner's purported new evidence was "unattributed, uncorroborated, hearsay, which does not reach the necessary legal level to set aside a verdict[,]" (Order dated May 29; 2008), was not an unreasonable application of federal

law, or an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Petitioner is therefore not entitled to habeas relief on this ground.

### K.  Vindictive Sentencing (Ground 12)

On December 5, 2012, this Court granted Petitioner leave to present a "newly discovered issue."  (See Docket Entry dated 12/05/2012).  Petitioner subsequently filed his motion, arguing that he was "vindictively sentenced" (Petitioner Letter dated 01/07/13).  Petitioner claims that, during a pretrial conference, the judge stated that, if he refused a plea deal and went to trial she would "impose the max of 25 years or more, if convicted[,]" in effect punishing him for exercising his Sixth Amendment right to trial.  *Id.*

Petitioner did not raise this claim on direct appeal to the Appellate Division or in either of his motions to vacate.  This claim is therefore unexhausted.  Federal courts, however, may deny unexhausted claims that are plainly without merit.  *See* 28 U.S.C. § 254(b)(2); *Rhines*, 544 U.S. at 277.  Here, Petitioner's claim is meritless.  Petitioner has not pointed to any record evidence of the statements Petitioner attributes to the trial judge or any other evidence of vindictive sentencing.  Furthermore, having reviewed the transcribed pre-trial conferences in Petitioner's case, the Court finds no such statements by the trial court. Thus, Petitioner has not met his burden of proving that his constitutional rights were violated and is not entitled to habeas relief on this ground.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997).

### CONCLUSION

For the foregoing reasons, the Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254.  Therefore, the petition for a writ of habeas corpus is denied.  Because petitioner has failed to make a substantial showing of a denial of a

constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2).  The

Clerk of the Court shall enter judgment accordingly and close this case.


SO ORDERED:


 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 19, 2013
          Brooklyn, New York